IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| MARY E. GRIFFIN, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | No. 2:08-0106 |
| v. | ) | Judge Nixon |
| | ) | Magistrate Judge Bryant |
| MICHAEL J. ASTRUE, | ) | |
| **Commissioner of Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| *Defendant*. | ) | |

## ORDER

Pending before the Court is Plaintiff Mary E. Griffin's ("Plaintiff" or "Griffin") Motion for Judgment on the Record ("Plaintiff's Motion") (Doc. No. 17). Magistrate Judge Bryant has issued a Report and Recommendation ("Report") (Doc. No. 20), to which Plaintiff has filed an objection (Doc. No. 22). Upon review of the Magistrate Judge's Report and for the reasons stated below, the Court **ADOPTS** the Report in its entirety and **DENIES** Plaintiff's Motion.

I.  BACKGROUND

   *A. Procedural Background*

Plaintiff filed the current application for disability insurance benefits ("DIB") on April 22, 1999, asserting a disability onset date of February 1, 1995. (Tr. 109-11.) Plaintiff asserted disability due to depression, "nerves," back pain, and knee pain. (Tr. 142.) Plaintiff's application was denied initially and upon reconsideration. (Tr. 78-79, 81-82.) On November 2, 2001, Plaintiff filed a request for a hearing by an Administrative Law Judge ("ALJ"). (Tr. 83.)

- 1 -

On July 31, 2003, the ALJ determined that Plaintiff was not entitled to DIB. (Tr. 66-70.) On December 5, 2005, the Social Security Appeal's Council vacated the ALJ's decision and remanded the matter for a new hearing and decision. (Tr. 71-73.)

On remand, the case was assigned to a new ALJ, who held a hearing on October 6, 2006. (Tr. 727-52.) After hearing testimony from Plaintiff and an impartial vocational expert, the ALJ issued a denial of benefits on March 2, 2007. (Tr. 21-32.) Specifically, the ALJ made the following findings of fact:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 1996.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of February 1, 1995 through her date last insured of June 30, 1996. 20 C.F.R. §§ 404.1520(b), 404.1571 *et seq.* (2010).

3. Through the date last insured, the claimant had the following severe impairments: minimal degenerative arthritis in the lumbar spine, hypertension, reflux disease, obesity, and depression. 20 C.F.R. § 404.1520(c) (2010).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (2010).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to lift and carry up to 25 pounds frequently and sit, stand, and walk for 6 to 8 hours each out of an 8 hour day. The claimant could not perform more than occasional climbing, balancing, kneeling, crouching, crawling, or stooping. The claimant had a slight (mild limitation, but generally functions well) limitation in her ability to understand and remember short, simple instructions. She had a moderate (moderately limited, but still able to function satisfactorily) limitation in her ability to carry out short, simple instructions; make judgments on simple, work-related decisions; respond appropriately to work pressures in a usual work setting. Finally, the claimant had marked (severely limited, but not precluded) limitations in her ability to understand, remember, and carry out detailed instructions.

6. Through the date last insured, the claimant was unable to perform past relevant work. 20 C.F.R. § 404.1565 (2010).

7. The claimant was born on August 7, 1951 and was 44 years old, which is defined as a younger individual. 20 C.F.R. § 404.1563 (2010).

8. The claimant has a limited education and is able to communicate in English. 20 C.F.R. § 404.1564 (2010).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled. 20 C.F.R. § 404.1568 (2010).

10. Through the date last insured, considering claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed. 20 C.F.R. §§ 404.1560(c), 404.1566 (2010).

11. The claimant was not under a disability as defined in the Social Security Act, at any time from February 1, 1995, the alleged onset date, through June 30, 1996, the date last insured. 20 C.F.R. § 404.1520(g) (2010).

Plaintiff filed a request for a review of the hearing decision on March 31, 2007. (Tr. 15.) On September 19, 2008, the Appeals Council entered an order denying the request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 9-11.)

On October 27, 2008, Plaintiff filed this action to obtain judicial review of the ALJ's final decision. (Doc. No. 1.) The Court has jurisdiction under 42 U.S.C. § 405(g). On September 30, 2009, Magistrate Judge Bryant recommended the ALJ's decision be affirmed and Plaintiff's Motion be denied. (Doc. No. 20.) Plaintiff asserts one (1) objection to the Magistrate Judge's findings. (Doc. No. 13.) Specifically, Plaintiff contends that the ALJ failed to give proper weight to the opinion of Dr. Martin Blevins.

*B. Factual Background*

The Court herein adopts the statement of facts provided in the Report. (Doc. No. 20, at 2-8).

- 3 -

## II.     STANDARD OF REVIEW

The Court's review of the Report is *de novo*. 28 U.S.C. § 636(b) (2010). However, this review is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (2010). Accordingly, if the Commissioner adopts the ALJ's decision, the reviewing court will uphold the decision if it is supported by substantial evidence. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is a term of art and is defined as "such evidence as a reasonable mind would accept as adequate to support the conclusion." *Richardson v. Pereles*, 402 U.S. 389, 401 (1979). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 198, 229 (1938)).

A finding of substantial evidence holds significant weight on appeal. "Where substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999); *Crum v. Sullivan*, 921 F.2d 642, 644 (1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations, because these factual determinations are left to the ALJ and the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331; *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to a different factual conclusion

as to the Plaintiff's claim on the merits than that of the ALJ, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

### III. PLAINTIFF'S OBJECTION TO THE MAGISTRATE JUDGE'S REPORT

*A. Plaintiff objects that the ALJ failed to give proper weight to the opinion of Dr. Melvin Blevins.*

In assessing the medical evidence supplied in support of a claim, the ALJ must adhere to the treating physician rule. Under this rule, the ALJ must give greater deference to the opinions of treating physicians than to those of non-treating physicians. *See* S.S.R. 96-2p (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The justification for this rule is that "the treating physician has had a greater opportunity to examine and observe the patient . . . [and] is generally more familiar with the patient's condition than are other physicians. *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (1992). Thus, if the opinion of the treating physician as to the nature and severity a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record," then it will be accorded controlling weight. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

Even when the physician's opinion is non-controlling, there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference. S.S.R. 96-2p ("In many cases, a treating physician's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."). The ALJ, in determining how much weight is appropriate, must consider a host of factors, including: the length, frequency, nature, and extent of the treatment relationship; the

supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

The ALJ may properly reject the opinion of a treating physician when that opinion is not sufficiently supported by medical findings. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (en banc); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997). Treating physician's opinions that are inconsistent may also be rejected. *See Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) (holding that the Secretary can reject a treating physician's unexplained opinion that a claimant is disabled where the same treating physician previously said the claimant could perform sedentary work); *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988) (holding that absent evidence of a worsening in a claimant's condition, the Secretary is justified in rejecting the opinion of a treating physician which is contrary to a previously expressed opinion by the same treating physician).

There is an additional procedural requirement associated with the treating physician rule. The ALJ must provide "good reasons" for discounting a treating physician's opinion. "Good reasons" are those that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." S.S.R. 96-2p. As the *Rogers* court explained:

> The purpose of this procedural aspect of the treating physician rule is two-fold. First, the explanation "let[s] claimants understand the disposition of their cases," particularly where a claimant knows that his physician has deemed him disabled and therefore "might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Rogers*, 486 F.3d at 242 (quoting *Wilson*, 378 F.3d at 544). Because of the significance of the notice requirement in ensuring that each denied claimant receives fair process, the failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded

the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.

486 F.3d at 242 (quoting *Wilson*, 378 F.3d at 544). Because of the significance of the notice requirement in ensuring that each denied claimant receives fair process, the failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record. *Id.*

In order to qualify for disability benefits, a claimant must be insured at the time she becomes disabled (the onset date of the disability). 20 C.F.R. § 404.315(a)(1) (2010). "Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin*, 88 F. App'x 841, 846 (6th Cir. 2004); *see also Cornette v. Sec'y of Health & Human Servs.*, 869 F.2d 260, 264 (6th Cir. 1988) (holding that the absence of any relevant medical evidence until two years after the claimant's alleged onset date supported the Secretary's finding that the claimant was not disabled as of his alleged onset date).

Plaintiff asserts that the ALJ failed to give proper weight to the opinion of Dr. Blevins, who Plaintiff asserts is a treating source as defined by 20 C.F.R. § 416.902 (2009). The record indicates that Plaintiff first saw Dr. Blevins on May 30, 1995, complaining of abdominal pain. (Tr. 372.) Dr. Blevins diagnosed Plaintiff with anemia, peptic ulcer disease, and a urinary tract infection. (*Id.*)

In July 1995, Tennessee Disability Determination Services requested that Dr. Blevins perform a consultative examination of Plaintiff, with specific instructions "to include the height, weight, and blood pressure, general appearance, description of gait and station and range of

motion of the lumbar spine and the left leg." (Tr. 255.) Upon examining Plaintiff, Dr. Blevins found no abnormalities in Plaintiff's gait, station, or range of motion of the lumbar spine or legs. (Tr. 256.) Dr. Blevins then concluded that as of July 3, 1995, Plaintiff had no impairment-related physical limitations that would affect her ability to perform work-related activities. (Tr. 257.)

On August 15, 1995, Dr. Blevins completed another assessment of Plaintiff's ability to do work-related activities. He concluded that Plaintiff was limited to occasionally lifting a maximum of twenty-five pounds, standing or walking for at least two hours out of an eight-hour workday, and sitting for six hours out of an eight-hour work day. (Tr. 374-75.) Dr. Blevins further opined that he could not assess the maximum weight of objects that Plaintiff could frequently carry. (*Id.*)

In March 2003, Dr. Blevins completed an "Assessment of [Plaintiff's] Condition from 1995 through 1998" as it pertained to Plaintiff's ability to do work-related activities. In this assessment, Dr. Blevins concluded that Plaintiff was limited to occasionally lifting or carrying ten pounds, frequently carrying less than ten pounds, could stand or walk for at least two hours out of an eight-hour workday, and could sit for less than six hours in an eight-hour workday. (Tr. 417-18.) Dr. Blevins further found that Plaintiff's ability to push or pull was limited in both her upper and lower extremities, that Plaintiff was limited in reaching, handling, fingering, and feeling, that Plaintiff would be required to periodically alternate between standing and sitting to relieve pain or discomfort, that Plaintiff's pain would frequently interfere with attention and concentration, and that Plaintiff should avoid even moderate exposure to extreme cold, extreme heat, noise, dust, vibration, humidity/wetness, hazards, fumes/odors/dusts/gases, perfumes, solvents/cleaners, soldering fluxes, cigarette smoke, and chemicals. (Tr. 419.)

- 8 -

Case 2:08-cv-00106   Document 24   Filed 06/18/10   Page 8 of 12 PageID #: 88

In May 2003, Dr. Blevins completed an "Assessment of [Plaintiff's] Condition from 1995 through June 1996. In this assessment, Dr. Blevins stated that during the relevant time period, Plaintiff was limited to occasionally lifting twenty pounds, frequently lifting less than ten pounds, could walk or stand for at least two hours in an eight-hour work day, and could sit for about six hours in an eight-hour workday. (Tr. 472-73.) Dr. Blevins also stated that Plaintiff's pain would often be severe enough to interfere with attention and concentration, that Plaintiff was limited in pushing and pulling in both her upper and lower extremities, that Plaintiff was limited in reaching and fingering, and that Plaintiff should avoid even moderate exposure to extreme cold, extreme heat, noise, dust, vibration, humidity/wetness, hazards, fumes/odors/dusts/gases, perfumes, solvents/cleaners, soldering fluxes, cigarette smoke, and chemicals. (Tr. 473-74.)

Dr. Blevins also completed assessments of Plaintiff's ability to perform work-related activities in September 2001 (Tr. 350-51), May 2002 (323-25), April 2006 (Tr. 639-42), and September 2006 (Tr.685-88). In these assessments, Dr. Blevins found that Plaintiff had significant impairment-related limitations in her ability to perform work-related activities as of the date of each assessment, but nothing in those assessments purports to indicate that Plaintiff was disabled on or before June 30, 1996, the date on which Plaintiff was last insured.

In rejecting Dr. Blevins's assessments of Plaintiff's ability to perform work-related activities, the ALJ stated:

> Notably, Dr. Blevins, who consultatively examined the claimant in July 1995 and then became her family physician, opined that she had no evidence of any impairment-related physical limitations. The undersigned assigns no weight to the subsequent functional assessment of Dr. Blevins in August 1995 and the numerous subsequent assessments from June 2001 through September 2006 which assign significant restrictions and limit the claimant to semi-sedentary activity. Said assessments are unsupported by the objective evidence of record, the claimant's

- 9 -

> benign clinical exams, and her conservative treatment. They (especially his August 1995 assessment that the claimant was limited to sedentary activity) are also markedly inconsistent with Dr. Blevins' [sic] own July 1995 opinion that the claimant had no physical limitations at all.

(Tr. 28-29.) The ALJ also stated that he "considered the vast amount of medical evidence generated subsequent to the expiration of the claimant's insured status . . . to determine if any of said evidence could relate back to the period before said expiration." (Tr. 29.)

The Court finds that substantial evidence supports the ALJ's decision to assign no weight to Dr. Blevins's assessments.[1] As an initial matter, the ALJ correctly disregarded Dr. Blevins's reports from September 2001, May 2002, April 2006, and September 2006. Those reports say nothing about whether Plaintiff was disabled prior to her date last insured, and are of little value in establishing whether Plaintiff was disabled in 1996 because they were made so long after that date. *See Strong*, 88 F. App'x at 846; *Cornette*, 869 F.2d at 264. This, combined with the inconsistencies between these reports and Dr. Blevins's report from July 1995, is more than enough to support the ALJ's decision to give them no weight.

There are three functional assessments that are relevant to Plaintiff's ability to perform work-related activities prior to June 30, 1996, Plaintiff's date last insured: (1) Dr. Blevins's assessment in August 1995; (2) his assessment in March 2003 that assesses Plaintiff's condition between 1995 and 1998; and (3) his assessment in May 2003 evaluates Plaintiff's condition between 1995 and June 1996. The ALJ rejected these assessments on grounds that they were "unsupported by the objective evidence of record, the claimant's benign clinical exams, and her

---

[1] The Court assumes that Dr. Blevins was considered a treating physician at the time of his August 1995 assessment because Plaintiff refers to Dr. Blevins as a treating physician, Defendant does not assert otherwise, and the ALJ does not mention it.

- 10 -

conservative treatment." (Tr. 29.) He also found that they were "markedly inconsistent" with Dr. Blevins's July 1995 assessment that Plaintiff had no work-related physical limitations. (*Id.*)

The Court finds substantial evidence to support the ALJ's rejection of these assessments. In August 1995, Dr. Blevins opined that Plaintiff suffered from work-related impairments. (Tr. 374-75.) Yet in this report, Dr. Blevins does not list any medical findings in support of his assessment. Nor is there any medical evidence in the record that suggests that Plaintiff's condition changed between July 1995, when Dr. Blevins opined that Plaintiff was able to work without restriction, and August 1995. Thus, as the ALJ noted, this assessment is totally unsupported by any medical evidence of record. This alone would be a "good reason" for rejecting a treating physician's opinion. *See Combs*, 459 F.3d at 652 (holding that the Secretary may properly reject the opinion of a treating physician when that opinion is not supported by medical findings). Nevertheless, the ALJ also notes the inconsistency between this report and the one Dr. Blevins had made just one month earlier. This is also a legitimate reason for rejecting the opinion of a treating physician. *See Hall*, 837 F.2d at 276 (holding that without evidence of a worsening in a claimant's condition, the Secretary is justified in rejecting the opinion of a treating physician that is contrary to a previously expressed opinion by the same treating physician).

The March and May 2003 assessments that purport to evaluate Plaintiff's condition prior to the date on which she was last insured suffer from similar shortcomings. Like the August 1995 assessment, the two 2003 assessments are unsupported by medical evidence, and can therefore be rejected. *See Combs*, 459 F.3d at 652. While both assessments contain attached clinical notes that summarize Plaintiff's medical history, those notes do not explain how Plaintiff's medical problems contribute to her work-related limitations. Importantly, Plaintiff

asserts disability due to depression, "nerves," back pain, and knee pain. Only depression is mentioned in one of these notes, and the note states that the depression is being treated with medication. Therefore, neither assessment lists any medical findings that could support Dr. Blevins's conclusions that Plaintiff is limited in her ability to perform work-related activities. (Tr. 417-19, 472-74.)

**IV.     CONCLUSION**

The Court does not find merit in Plaintiff's objection because there is substantial evidence in the record to support the ALJ's decision to reject Dr. Blevins's testimony on grounds that it does not establish that Plaintiff was disabled under 42 U.S.C. § 423(d)(1)(A) as of June 30, 1996. Therefore, Plaintiff's Motion is **DENIED**, and the Court **ADOPTS** the Magistrate Judge's Report in its entirety.

This Order terminates this Court's jurisdiction over this action and the case is **DISMISSED**.

It is so ORDERED.

Entered this the _17th_____ day of June, 2010.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT